## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SERVICE WOMEN'S ACTION NETWORK,<br>AMERICAN CIVIL LIBERTIES UNION,<br>and AMERICAN CIVIL LIBERTIES<br>UNION OF CONNECTICUT, | ) ) ) ) | Civil Action No. 3:15-cv-137 |
| Plaintiffs,<br>v. | ) ) ) ) | COMPLAINT |
| U.S. DEPARTMENT OF DEFENSE, | ) ) | February 3, 2015 |
| Defendant. | ) ) ) | |

## INTRODUCTION

The U.S. Military Academy at West Point, the U.S. Air Force Academy, and the U.S. Naval Academy (collectively "Military Service Academies" or "Academies") are among this country's preeminent educational institutions, providing a premiere education and leadership training, free of tuition, to a select group of cadets and midshipmen each year. The federal government owns and runs the Academies. Many college-bound women are highly qualified to attend the Academies by every measure,—including academic performance, physical fitness, and leadership potential. Nevertheless, classes at the Military Service Academies are overwhelmingly male.

These gender disparities contribute to campus climates rife with gender bias and discrimination. These environments are conducive to sexual harassment and assault of cadets and midshipmen and lead to a culture of shunning and ostracizing those who report sexual violence. A Defense Advisory Committee has identified the limited number of women as a risk factor for rape and abuse, but the Academies have not remedied the disparity or the resulting misogynistic culture.

1

The underrepresentation of women at the Military Service Academies contrasts starkly with the wide range of opportunities for military leadership open to women after graduation, particularly in light of the Department of Defense's elimination of gender-based restrictions on women's service in combat units and specialties. However, because the service branches often draw their combat leadership from the Military Service Academies, the Academies' persistent gender disparities reinforce the "brass ceiling" on women's military leadership by graduating fewer women as leaders in all military fields. In turn, these disparities promote a misogynistic environment in the service branches, similar to that at the Academies, putting servicewomen at heightened risk for sexual harassment and assault.

Plaintiffs Service Women's Action Network, the American Civil Liberties Union, and the American Civil Liberties Union of Connecticut requested records pursuant to the Freedom of Information Act ("FOIA") to gather information about the policies and practices that lead to women's underrepresentation in the Military Service Academies. In violation of the FOIA, the Department of Defense failed to conduct a reasonable search or to provide the requested records.

1.      This action is brought under the Freedom of Information Act, 5 U.S.C. § 552, for declaratory relief finding that the United States Department of Defense ("DOD") has violated FOIA and for injunctive relief to compel a reasonable search for records and timely production of responsive records to Plaintiffs.

2.      Plaintiffs seek to obtain the release of records on a matter of public concern, namely, the discrimination that women who aspire to be military officers face due to the admissions policies of the DOD and the Military Service Academies.

## JURISDICTION AND VENUE

3.      This court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331 and 1361.

4.      Venue lies in this district under 5 U.S.C. § 552 (a)(4)(B) and 28 U.S.C. § 1391(e)(3) as Plaintiff ACLU of Connecticut resides and has its primary place of business in the District of Connecticut and no real property is involved in the action.

## PARTIES

5.      Plaintiff Service Women's Action Network ("SWAN") is a nonpartisan, nonprofit organization that supports, defends, and empowers current service women and female veterans through advocacy initiatives and community programs. SWAN seeks to transform military culture by securing equal opportunity and the freedom to serve in uniform without threats of harassment, discrimination, intimidation, and assault. SWAN resides and has its principal place of business in New York City, New York.

6.      Plaintiff American Civil Liberties Union ("ACLU") is a national, nonpartisan public interest organization of more than a million members, activists, and supporters, dedicated to protecting the constitutional and civil rights of individuals. Through its Women's Rights Project, the ACLU has long been a leader in legal battles to ensure the full equality of women, including military servicewomen, and to ensure that women and girls have access to equal opportunity in public educational institutions. Recently, the ACLU has participated in litigation challenging the military's ground combat exclusion policy, which was subsequently rescinded, and in FOIA litigation relating to the military and Department of Veterans' Affairs' treatment of claims related to military sexual trauma. The ACLU resides and has its principal place of business in New York City, New York.

7.      Plaintiff ACLU of Connecticut ("ACLU-CT") is a non-profit, non-partisan membership organization dedicated to protecting individual civil rights and the principles of individual liberty embodied in the United States and Connecticut Constitutions. The ACLU Foundation of Connecticut, the litigation arm of the ACLU-CT, engages in litigation in state and federal courts. The ACLU-CT has over 5,000 members in the State of Connecticut and resides and has its principal place of business in Hartford, Connecticut. The ACLU-CT has maintained a docket with impact litigation to promote gender equity, including FOIA litigation relating to the military and Department of Veterans' Affairs' treatment of claims related to military sexual trauma and Title IX litigation to create equal opportunities for participation in varsity athletics at Quinnipiac University, a private university that receives federal funds.

8.      Defendant U.S. Department of Defense is the federal agency responsible for coordinating and supervising government activity relating directly to national security, the United States Armed Forces, and the Military Service Academies. The DOD is an agency within the meaning of 5 U.S.C. § 552(f).

## STATEMENT OF FACTS

### The Military Service Academies Admit Few Women and Have a Misogynistic Culture

9.      Women first matriculated at the Military Service Academies in 1976. Nearly forty years later, the U.S. Military Academy (USMA), the U.S. Air Force Academy (USAFA), and the U.S. Naval Academy (USNA) have failed to recruit and admit sufficient numbers of women to foster a healthy environment in which they are accepted and integrated.

10.     The United States Military Academy in West Point, NY, is an academically and physically rigorous four-year leader-development program that prepares students to serve in the U.S. Army. Cadets, who attend West Point tuition-free, graduate with a Bachelor of Science

degree with a commission as a Second Lieutenant and must serve a minimum of five years on active duty. The USMA maintains class composition goals for women, which are set between 14% and 20% of the Corps of Cadets. The percentage of women at West Point has remained between 14% and 17% for over twenty-five years. Women currently constitute a mere 16% of the Corps of Cadets.

11.     The United States Air Force Academy in Colorado Springs, CO, is a four-year program that describes itself as both a military organization and a university. Cadets, who attend tuition-free, graduate with a Bachelor of Science degree with a commission as a Second Lieutenant in the U.S. Air Force and must serve a minimum of five years on active duty. The USAFA has limited its enrollment of women cadets to at or below 23% of the cadet wing since 1976, despite commissioning its graduates into the Air Force, in which over 99% of career fields have been open to women for two decades.

12.     The United States Naval Academy in Annapolis, MD, prepares its students to become professional officers in the U.S. Navy and Marine Corps. Students are midshipmen on active duty in the U.S. Navy and attend the Academy for four years. Midshipmen attend tuition-free and graduate with a Bachelor of Science degree and with a commission as either an Ensign in the Navy or a Second Lieutenant in the Marine Corps. Graduates are required to serve a minimum of five years on active duty. At the USNA, women continue to constitute less than a quarter of the Brigade of Midshipmen. USNA directs no specific recruiting efforts toward women and has failed to admit women in numbers even closely equivalent to those of men.

13.     Without a critical mass of women, female students are subjected to a campus environment of discrimination and gender bias that, in turn, leads to the targeting of women at the Academies for mistreatment, discrimination, harassment, and violence. Despite nearly ten

years of research, training, and focus on the crisis of sexual assault at Military Service Academies, reports of sexual assault at the Academies have risen in recent years. The Military Service Academies received 70 reports of sexual assaults in the 2012-2013 Academic Program Year. According to the DOD's data, over 90% of the victims were women.

14.     Women's underrepresentation in the Military Service Academies results in a dearth of women officers in the Armed Forces. Overall, women comprise less than 17% of all officers in the military services.

15.     These disparities cannot be justified by reference to limits on the numbers of fields and positions that women can hold within the military. Women have been serving as combat pilots in the Air Force and on combat ships since the early 1990s. Other restrictions on women's service have been lifted over the past two decades, including restrictions on women's service in ground combat units. Large numbers of women fought in combat in Iraq and Afghanistan.

16.     In 2013, citing the changes in women's combat service, the Secretary of Defense rescinded his only remaining policy limiting women's service in the military – the direct ground combat exclusion policy – and ordered the service branches to integrate women fully into all facets of military service by January 1, 2016.

17.     Despite these dramatic shifts in the opportunities for women to serve in all aspects of military life, the Academies maintain a student body that reflects a distant past in which the military barred women from serving in many leadership roles.

18.     As in the Academies, and in part as a result of the Academies' artificial limits on the numbers of women groomed for military leadership, the Armed Forces preserve a culture of discrimination in which harassment and violence against women remain far too common.

Thousands of members of the United States military experience sexual harassment, sexual assault, or rape while serving. According to the DOD, 5,983 women reported military sexual assaults in FY2014. Most victims of sexual trauma, however, never report, often because of ostracism from colleagues and superiors similar to that experienced by those who report sexual violence at the Academies.

### SWAN, ACLU, and ACLU-CT FOIA Requests

19.     By email dated November 14, 2014, Plaintiffs submitted FOIA requests to USMA, USAFA, USNA, and other relevant DOD components for records relating to admissions policies, rates of admission, recruiting efforts, and admissions targets or quotas for women. Additional items of the FOIA request sought records regarding facilities for women and policies and responses to sexual harassment and assault at the Military Service Academies. Copies of the letters are attached as Exhibits A-C.

20.     The Military Service Academies received these letters on November 14, 2014.

21.     By letter and email dated December 5, 2014, USMA asked Plaintiffs to narrow their FOIA request to documents from the last six years because records before that time "may have been destroyed." By email dated December 10, 2014, Plaintiffs declined to narrow their request for the reason stated because the USMA had failed even to determine whether responsive records existed beyond the last six years. *See* 5 U.S.C. § 552(a)(6)(A)(ii)(I).

22.     On December 31, 2014, Plaintiffs received a letter from the USMA stating that it had not yet made a determination on the Plaintiffs' fee waiver request and estimated it might take 900 hours to search for and review records responsive to the FOIA request. The USMA did not deny Plaintiffs' request for records or a fee waiver and accordingly did not advise Plaintiffs of

their appeal rights. The USMA asked Plaintiffs to provide an alternative time frame for

processing or modify their request.

23.     The USMA communication of December 31, 2014 also purported to invoke the

"unusual circumstances" provision of FOIA, which permits an agency at maximum an additional

ten working days to comply with a FOIA request, beyond the usual statutory 20-day period. The

USMA did not provide an expected date for a determination of the request.

24.     By email dated January 2, 2015, Plaintiffs stated they would proceed on their

November 14, 2014 request but agreed to modify their request for items 1, 2, 3, 10, and 11 so as

to seek records only from 2001 to the present. Plaintiffs also reminded USMA that they will

accept a random sample of records responsive to item 3.

25.     Further, by email dated January 5, 2015, Plaintiffs declined to consider an

alternative time frame because the USMA had failed to provide "the date on which a

determination is expected to be dispatched," as required by statute, *see* 5 U.S.C. §

552(a)(6)(B)(i), and thus is not entitled to an additional ten days.

26.     Even if the USMA were entitled to the maximum extension of an additional ten

working days pursuant to the "unusual circumstances" provision, those additional ten days have

already expired.

27.     Further, because the USMA has not proposed a date by which it will comply with

the original or modified request, Plaintiffs are unable to "arrange an alternative time frame" as

contemplated by the "exceptional circumstances" provision of FOIA. *Id.* § 552(a)(6)(C)(iii).

28.     The USMA has failed to produce any responsive records or determine that

responsive records do not exist.

29.   Plaintiffs have not received any response or other communication from the USAFA.

30.   On January 6, 2015, Plaintiffs sent an email to the USAFA continuing to seek the requested records, but modified their request for items 1, 2, 3, 10, and 11 to seek records only from 2001 to the present. Plaintiffs also stated that they remain willing to accept a random sample of records responsive to item 3.

31.   By letter and email dated November 26, 2014, the USNA acknowledged receipt of the FOIA request and noted its substantial nature.

32.   By letter and email dated December 10, 2014, the USNA concluded the request was "unreasonably burdensome" and that Plaintiffs' request for a fee waiver would be granted in part and denied in part. The USNA stated that it would therefore "not proceed further with your request until the scope of your request has been modified, a fee agreement has been reached, and payment has been received." The USNA stated further that it would "reduce" its fee calculations if Plaintiffs modified their request and advised Plaintiffs of their appeal rights.

33.   By email dated December 29, 2014, Plaintiffs agreed to modify their request to the USNA by narrowing items 1, 2, 3, 10, and 11 to seek records only from 2001 to the present. Plaintiffs remain willing to accept a random sample of records in response to item 3.

34.   To date, the USNA has not advised Plaintiffs of any recalculation of the estimated fees nor informed Plaintiffs whether it continues to believe the request is unduly burdensome.

35.   Between December 12, 2014 and January 29, 2015, the USNA provided documents responsive to some but not all of the items in Plaintiffs modified FOIA request. In particular, the USNA provided documents in response to items 5, 6, 7, 8, 9, 10, 11, and 14 of the

request, but the documents provided do not fully respond to each item. The USNA has produced no records in response to items 1, 2, 3, 4, 12, 13, or 15.

36.     In sum, DOD has wrongfully withheld requested records from Plaintiffs. To date, the Military Service Academies have not fulfilled the Plaintiffs' requests and have violated their obligations under FOIA. The USMA and USAFA have not provided any responsive records at all. The USNA has provided records in response to some but not all items in Plaintiffs' request, and the statutory deadlines for all responses have expired.

37.     Plaintiffs have exhausted the administrative remedies available for their FOIA requests.

## FIRST CLAIM FOR RELIEF

### DOD Failed to Promptly Release Records Responsive to Plaintiffs' Request

38.     Plaintiffs repeat and incorporate every allegation contained in paragraphs 1-37 as if set forth in full.

39.     DOD's failure to release responsive records violated Plaintiffs' right to those records under 5 U.S.C. § 552(a)(3)(A).

40.     In this action, Plaintiffs seek judicial review of DOD's failure to release records sought in their requests to the USMA, USAFA, and USNA. As to items 1, 2, 3, 10, and 11, Plaintiffs have modified their requests to each Academy and seek judicial review only of the failure by DOD to disclose responsive records from 2001 to the present. As specified in their request, Plaintiffs will accept a random sample of the records responsive to item 3.

## SECOND CLAIM FOR RELIEF

### DOD Failed to Make a Reasonable Effort to Search for Records

41.    Plaintiffs repeat and incorporate every allegation contained in paragraphs 1-37 as if set forth in full.

42.    DOD's failure to make a reasonable effort to search for responsive records violated Plaintiffs' rights under 5 U.S.C. § 552(a)(3)(C).

43.    In this action, Plaintiffs seek judicial review of DOD's failure to make a reasonable effort to search for records sought in their requests to the USMA, USAFA, and USNA. As to items 1, 2, 3, 10, and 11, Plaintiffs have modified their request to each Academy and seek judicial review only of the failure by DOD to make a reasonable search for responsive records from 2001 to the present. As specified in their request, Plaintiffs will accept a random sample of the records responsive to item 3.

### Requested Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

1)    Order Defendant to perform a reasonable search and disclose the requested records to Plaintiffs;

2)    Order Defendant to grant a full fee waiver to Plaintiffs;

3)    Provide for expeditious proceedings in this action;

4)    Award Plaintiffs costs and reasonable attorney fees in this action as provided by 5 U.S.C. § 552(a)(6)(E); and

     5)     Grant any other relief the Court deems appropriate.


Dated: February 3, 2015
     New Haven, CT

Respectfully submitted,


By:__/s/ Michael J. Wishnie_____

| | |
|---|---|
| Ashley Anderson, Law Student Intern | Sandra J. Staub, ct28408 |
| Alexandra Brodsky, Law Student Intern | Legal Director |
| Phoebe Clarke, Law Student Intern | ACLU of Connecticut |
| Elizabeth Deutsch, Law Student Intern | 2074 Park Street, Suite L |
| Arielle Humphries, Law Student Intern | Hartford, CT 06106 |
| Bethany Li, ct29666 | (860) 523-9146 ext. 211 |
| Michael Wishnie, ct27221 | |
| P.O. Box 209090 | |
| New Haven, CT 06520-9090 | |
| (203) 432-4800 | |

Ariela Migdal, Senior Staff Attorney[*]
Lenora M. Lapidus, Director[*]
ACLU Foundation Women's Rights Project
125 Broad St., 18th Fl.
New York, NY 10004
(212) 519-7861

*Motion for admission for admission *pro hac vice* forthcoming.